# UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

_____

No. 98-30155

_____

CHRIS CHAFFIN,

Plaintiff-Appellant,

versus

JOHN H. CARTER CO., INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
For the Eastern District of Louisiana

_____

June 22, 1999

Before KING, Chief Judge, POLITZ and BENAVIDES, Circuit Judges.

POLITZ, Circuit Judge:

Chris Chaffin appeals a summary judgment in favor of her former employer, defendant John H. Carter Co., Inc. For the reasons assigned, we affirm.

## BACKGROUND

Chaffin worked as a programmer in Carter's data processing department. On March 21, 1996, she advised the manager of her department, Henry A. Merritt, that she needed "a few days off." She left work the following day, consulted her internist who prescribed Prozac, recommended mental health counseling for depression, and suggested she take off from work for several weeks. Subsequently, Chaffin met on three occasions with a social worker and once again with the internist, both of whom favored an extension of her absence from work. Chaffin

left a message for Merritt explaining that she suffered from depression and would be unable to return to work for an indeterminate time; thereafter, she gave him periodic updates of her condition through voice mail. She did not speak personally with Merritt or any other superior at Carter.

On April 24, while Chaffin was still on leave from work, Carter's product sales manager, Jim Henry, saw her drinking at a bar. Chaffin told Henry that she had been on leave from work for several weeks and she pointedly asked him not to tell anyone that he had seen her at the bar. Henry, who was at the bar with Carter's executive assistant to the president, Howard Nobles, informed Nobles of the encounter. The next morning Henry also advised Merritt.

Merritt immediately telephoned Chaffin and left a telephone message calling for a meeting. Chaffin responded with a reply telephone message, stating that she would return to work the following week. The next day she requested and obtained a release from her doctor to return to work. She had been absent from work for five weeks with full pay.

On April 29, Chaffin met with Merritt and Nobles. Merritt questioned her extended absence from work and demanded that she explain the episode at the bar; he wanted to know why she was able to drink at a bar but was unable to work and pressed her to explain the request that Henry keep their encounter secret. Chaffin declined to justify her conduct; Merritt fired her.

Chaffin sued, claiming that she was fired in violation of the Family and

Medical Leave Act.[1]  Carter moved for summary judgment, and the trial court agreed with two of Carter's submissions -- (1) that the FMLA was not implicated by Chaffin's termination because her leave was taken pursuant to the company's voluntary paid-leave policy rather than the FMLA, and (2) that Chaffin failed to offer sufficient evidence that she was fired because she took leave.  Persuaded that the second basis adequately supports an affirmance of the trial court, we need not address the first.  For purposes of today's disposition we assume without deciding that Chaffin took leave pursuant to the FMLA.

## ANALYSIS

We review a trial court's grant of summary judgment de novo.[2]  Summary judgment is proper if "the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law."[3]

The FMLA requires covered employers to provide up to 12 weeks of unpaid leave to any eligible employee who suffers from "a serious health condition that makes the employee unable to perform the functions of the position of such

---

[1]29 U.S.C. § 2601 **et seq.**  Chaffin also alleged various other violations of law not at issue in this appeal.

[2]**See Hypes v. First Commerce Corp.**, 134 F.3d 721 (5th Cir. 1998).

[3]Fed. R. Civ. P. 56(c).

employee."[4] After a qualifying absence, the employer must restore the employee to the same position or a position comparable to that held by the employee before the leave.[5] An employer may not "interfere with, restrain, or deny the exercise of . . . any right provided under" the FMLA.[6] Thus, employers have a prescriptive obligation under the FMLA -- they must grant employees substantive rights guaranteed by the FMLA -- and they have a proscriptive obligation -- they may not penalize employees for exercising these rights.[7]

Chaffin makes no claim that Carter denied her a substantive entitlement under the FMLA. Rather, she contends that Carter punished her for exercising her right under the FMLA to take leave. She therefore is asserting a violation of a proscriptive duty. The parties agree that Chaffin's claim -- that Carter fired her for taking FMLA-qualifying leave -- should be analyzed under the framework established in **McDonnell Douglas Corp. v. Green**.[8]

Although we have suggested that **McDonnell Douglas** may apply to certain FMLA claims,[9] we have not squarely confronted this issue. We do so now, joining

---

[4]29 U.S.C. § 2612(a)(1)(D); **see Manuel v. Westlake Polymers Corp.**, 66 F.3d 758 (5th Cir. 1995).

[5]29 U.S.C. § 2614(a)(1).

[6]29 U.S.C. § 2615(a)(2).

[7]**See Hodgens v. General Dynamics Corp.**, 144 F.3d 151 (1st Cir. 1998).

[8]411 U.S. 792 (1973).

[9]**See Hypes**, 134 F.3d at 726.

4

our colleagues in other circuits,[10] and hold that when direct evidence of discrimination is lacking, the **McDonnell Douglas** organizational framework applies to claims that an employee was penalized for exercising rights guaranteed by the FMLA. As the Seventh Circuit noted, there is no significant difference between such claims under the FMLA and similar claims under other anti-discrimination laws.[11] When the often thorny question of intent is involved, deciphering the employment relationship becomes essential and, in this endeavor, **McDonnell Douglas** has proved an enduring guide for courts addressing claims under various statutes, including Title VII, the Age Discrimination in Employment Act, and the Americans with Disabilities Act.[12] Nothing in the FMLA landscape suggests that the teachings of **McDonnell Douglas** would be less useful in ferreting out illicit motivations in that setting.[13]

The **McDonnell Douglas** framework is by now familiar even to those not experts in employment discrimination law. The three-part burden-shifting scheme places the onus on the plaintiff alleging retaliatory discharge to establish a prima facie case of discrimination by demonstrating that: (1) she engaged in a protected activity; (2) the employer discharged her; and (3) there is a causal connection

---

[10]**See King v. Preferred Technical Group**, 166 F.3d 887 (7th Cir. 1999); **Hodgens**, 144 F.3d at 160; **Morgan v. Hilti, Inc.**, 108 F.3d 1319 (10th Cir. 1997).

[11]**King**, 166 F.3d at 890-92.

[12]**See Sherrod v. American Airlines, Inc.**, 132 F.3d 1112 (5th Cir. 1998).

[13]Our holding does not extend to alleged deprivations of substantive rights under the FMLA. **See Diaz v. Fort Wayne Foundry Corp.**, 131 F.3d 711 (7th Cir. 1997).

between the protected activity and the discharge.[14] Once the plaintiff makes this preliminary showing, the employer must articulate a legitimate, nondiscriminatory reason for the plaintiff's termination.[15] If the employer carries this burden of production, the presumption raised by the prima facie case is rebutted.[16] To defeat summary judgment, the plaintiff must produce substantial probative evidence that the proffered reason was not the true reason for the employment decision and that the real reason was the plaintiff's participation in the protected activity.[17] The plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual. Rather, a reason cannot be proved to be a pretext for discrimination unless it is shown both that the reason was false and that discrimination was the real reason.[18]

In the case at bar, we assume that Chaffin established a prima facie case of unlawful retaliatory discharge. We then inquire whether Carter produced a legitimate, nondiscriminatory reason for her termination. Carter did so, submitting evidence that Chaffin was fired because she refused to justify her conduct -- drinking at a bar while taking a five-week, paid leave from work -- or to explain her entreaty to Henry not to reveal the episode. We therefore move to the final step in

---

[14]**See Long v. Eastfield College**, 88 F.3d 300 (5th Cir. 1996).

[15]**Id.**

[16]**Texas Dept. of Community Affairs v. Burdine**, 450 U.S. 248 (1981).

[17]**Id.**

[18]**Walton v. Brisco Indus., Inc.**, 119 F.3d 368 (5th Cir. 1997) (citing **St. Mary's Honor Ctr. v. Hicks**, 509 U.S. 502 (1993).

**McDonnell Douglas**, the determination whether Chaffin has introduced sufficient evidence to rebut Carter's articulated reason for her discharge.

In attempting to satisfy her burden, Chaffin relies on fine distinctions between her and Carter's version of the conversation that preceded her termination. For instance, she claims that the first question Merritt posed to her was: "Why were you sick?" In contemporaneous handwritten notes Chaffin framed the question differently. She wrote that Nobles and Merritt "wanted . . . [her] to explain why [she] was out." This inquiry is entirely consistent with Merritt's explanation for firing Chaffin -- that he asked her to explain the cause for her five-week paid absence. Implicit in that question is an invitation to reconcile a purported inability to work with the apparent ability to drink socially at a bar. And, indeed, Merritt's follow-up explicitly requested just such a reconciliation.

We deem more significant Chaffin's admission that the focus of the meeting was not to gain details about her illness; rather, Nobles and Merritt informed her that they had spoken with Henry and they attempted to elicit from her an explanation of her attendance at the bar and her comment to Henry. Although she now characterizes her response as a denial that she requested Henry not to tell Merritt that he had seen her at the bar, in her earlier handwritten notes she states that she told Merritt, "I might have said 'don't tell anyone because it wouldn't look good even though I wasn't doing anything wrong.'" The record reflects essential agreement on the substance of the meeting: Merritt and Nobles were dissatisfied with Chaffin's responses to their inquiry and, as Chaffin acknowledged in her

deposition, told her that they "felt like [she] had lied to them about [her] illness. . . . [b]ecause [she] was seen out while [she] was sick."

Finally, Chaffin offers evidence that Merritt consistently expressed hostility toward employees who took leave from work. Though several employees complained that Merritt was unduly vigilant in monitoring their sick leave, no employee was ever fired for taking leave. Indeed, Chaffin received no protest from Merritt when she took a five-week, fully paid leave. It was only after she was seen drinking at a bar that Merritt questioned the validity of the leave.

On balance, we are persuaded that Chaffin has not countered the evidence offered by Carter of its legitimate, nondiscriminatory reason for her termination.

The judgment appealed is AFFIRMED.