**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

No. 01-20234
(Summary Calendar)
_____

KARL H. PETERSON,

Plaintiff-Appellant,

v.

CITY OF HOUSTON, TEXAS,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Texas - Houston Division
(H-99-CV-2458)
_____

August 20, 2001

Before HIGGINBOTHAM, WIENER, and BARKSDALE, Circuit Judges.

PER CURIAM[*]:

Plaintiff-Appellant Karl Peterson ("Peterson") appeals the granting of summary judgment in favor of Defendant-Appellee City of Houston (the "City"). Peterson brought suit alleging violations of the Americans with Disabilities Act (ADA) and the Family Medical Leave Act (FMLA). Because we find that Peterson has failed to establish the existence of a genuine issue of material fact as to

---

[*] Pursuant to 5TH Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH Cir. R. 47.5.4.

either his ability to continue his employment with a reasonable accommodation or his termination as retaliation for using FMLA leave, we affirm.

## I.

### FACTS AND PROCEEDINGS

Peterson, a former curator at the City of Houston Zoo (the "Zoo"), filed suit against the City following its termination of his employment in April 1998. Peterson suffers from a psychological disorder and as a result, experiences insomnia. According to Peterson, his insomnia caused his tardiness and absenteeism at the Zoo, which eventually led to his firing.

In 1990, Peterson was made a Curator, a high-ranking position with supervisory responsibilities. Throughout his employment Peterson exhibited an irregular attendance pattern marked by tardiness and occasional absenteeism. In April 1997, he took a leave of absence from his position because of stress. In August 1997, his psychiatrist approved his return to work. Peterson returned to work the next month following his twenty-one week leave. When he reported for work, he was informed by his supervisor that he must begin arriving at 8:00 A.M. every morning. After Peterson indicated that he could not make that starting time, his superior allowed him to delay his arrival time until 9:00 A.M. each day.

In January 1998, the Houston Parks and Recreation Department issued a Policy and Procedure Directive ("Attendance Policy")

2

defining the violations and repercussions of excessive absenteeism and tardiness.  Peterson's tardiness and absenteeism nevertheless continued in the months following the issuance of the Attendance Policy.  In accordance with the Attendance Policy terms, he was given a seven-day disciplinary suspension.  On his return to work following his suspension, however, his attendance problems at the Zoo continued.  Pursuant to Peterson's request, his psychiatrist wrote a letter to the Zoo in April 1998 clarifying that Peterson's disorder made it difficult for him to arrive at work on time.  This letter did not specify an accommodation or arrival time that would ameliorate Peterson's attendance problem.  Finally, in June 1998, he was suspended indefinitely by the City.

Peterson then filed this action for violations of the ADA and the FMLA.  After initial discovery, the City moved for summary judgment of dismissal, which the district court granted on both claims.  Peterson timely appealed.

II.

ANALYSIS

A.  Standard of Review

We review the district court's grant of summary judgment de novo, applying the same standard as the district court.[1]  A motion for summary judgment is properly granted only if there is no

---

[1]  Morris v. Covan Worldwide Moving, Inc., 144 F.3d 377, 380 (5th Cir. 1998).

3

genuine issue as to any material fact.[2]  An issue is material if its resolution could affect the outcome of the action.[3]  In deciding whether a fact issue has been created, the court must view the facts and the inferences to be drawn therefrom in the light most favorable to the nonmoving party.[4]

The standard for summary judgment mirrors that for judgment as a matter of law.[5]  Thus, the court must review all of the evidence in the record, but make no credibility determinations or weigh any evidence.[6]  In reviewing all the evidence, the court must disregard all evidence favorable to the moving party that the jury is not required to believe, and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached.[7]

B.  ADA Claim

Peterson must show that he is a "qualified individual with a disability" to succeed on his ADA claim.[8]  Such an individual is

---

[2]  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

[3]  Anderson v. Liberty Lobby, Inc. 477 U.S. 242, 248 (1986).

[4]  Olabisiomotosho v. City of Houston, 185 F.3d 521, 525 (5th Cir. 1999).

[5]  Celotex Corp., 477 U.S. at 323.

[6]  Reeves v. Sanderson Plumbing Prod., Inc., 530 U.S. 133, 150 (2000).

[7]  Id. at 151.

[8]  42 U.S.C. §§ 12111(8), 12112(a).

one who can perform the essential functions of his job with or without reasonable accommodation.[9] The district court reasoned that Peterson was not a qualified individual because (1) regular attendance was an essential part of his job and (2) the evidence demonstrates that, even with the requested accommodation, Peterson would not be able to attend his job in a timely and regular fashion. Such attendance on Peterson's part was essential because the Zoo was open to the public every day from 10:00 A.M. until 6:00 P.M., and Peterson, as a Curator, supervised keepers and was responsible for the reptile and amphibian exhibits.

Peterson claimed that his tardiness and absenteeism resulted from his disabling insomnia and that, with the reasonable accommodation of a 9:30 A.M. arrival time, he would have been able to fulfill his responsibilities. The Zoo's failure to grant him this accommodation and its subsequent decision to terminate him violated the ADA, he argues.

Peterson's attendance over the two months preceding his termination, however, undercut his contention. His attendance record shows many days when he arrived well past 9:30 or even 10:00 A.M. and, more importantly, many days and even weeks when Peterson did not come to work at all. Furthermore, the April 1998 letter from Peterson's psychiatrist does not bolster Peterson's claim. The letter does not designate specific accommodations that would

---

[9] <u>Id.</u>

permit his performance of essential job functions and does not explain how any modification in arrival time would alleviate Peterson's chronic absenteeism. Hence, as the district court correctly noted, in Peterson's capacity as Curator, his requested accommodation still would not have allowed him to perform the essential functions of the job. Summary judgment was properly granted on Peterson's ADA claim.[10]

C.   FMLA Claim

The FMLA ensures that qualifying employees can take up to twelve weeks of unpaid leave per year without adverse employment consequences.[11]  An eligible employee is one who suffers from a "serious health condition that makes the employee unable to perform the functions of the position of such employee."[12]  On the employee's return, the employer must restore the employee to a comparable position.[13]  To state a prima facie FMLA claim, the employee must show that (1) his leave was FMLA protected, (2) an adverse employment action occurred, and (3) the adverse action was

---

[10]   See Hypes v. First Commerce Corp., 134 F.3d 721 (5th Cir. 1998) (holding that regular attendance is an essential function of most jobs and plaintiff's requested time accommodation of arriving to work later than scheduled would not remedy plaintiff's tardiness and absenteeism; therefore, plaintiff was not a qualified individual under the ADA and summary judgment for the employer was proper).

[11]   See generally 29 U.S.C. §§ 2612, 2615.

[12]   29 U.S.C. § 2612(a)(1)(D).

[13]   29 U.S.C. § 2614(a)(1).

taken in response to his use of FMLA leave.[14]   If an employee establishes a prima facie case, the employer must proffer a legitimate, nondiscriminatory reason for the adverse action.  And, if the employer does so, the burden shifts back to the employee to show that the employer's reason is a pretext for discrimination.[15]

Here, Peterson cannot establish a prima facie case.  To gain FMLA protection, Peterson would have had to file proper documentation and comply with employer notification requirements. The record does not demonstrate whether Peterson properly took these actions.  More importantly, out of his twenty-one week leave from April 1997 until September 1997, no more than twelve weeks would be protected by the FMLA.

Assuming arquendo that Peterson's leave, or a portion of his leave, qualified for FMLA protection, he nevertheless must raise a genuine issue as to the causation requirement of his prima facie case; in other words, he must present enough evidence for a reasonable trier of fact to conclude that the City indefinitely suspended him because he took FMLA protected leave.  Peterson has not met this burden.  His only evidence of causation is the testimony of an assistant, employed by the City, who prepared Peterson's absence report for evaluation by Peterson's superiors. In this report, the assistant itemized Peterson's absences from

---

[14]  Chaffin v. John H. Carter Co., Inc., 179 F.3d 316, 319 (5th Cir. 1999).

[15]  Id. at 320.

1996 until his indefinite suspension, including his twenty-one week absence in the middle of 1997. As the district court correctly noted, however, an itemized list of absences reviewed by a superior does not, by itself, give rise to an inference of causation. In fact, in Peterson's Letter of Indefinite Suspension, his supervisor documented only absences and tardiness occurring between March 30, 1998 and May 26, 1998. During that eight and one-half week period, Peterson missed 218 hours of work —— the equivalent of more than five weeks. Under the Attendance Policy, his work record for the two months immediately preceding his suspension more than qualifies Peterson for disciplinary action. Peterson presents no evidence to suggest that his supervisors relied on anything other than that two-month period as the basis for his suspension. Put simply, he obviously was fired for absenteeism well in excess of any possible FMLA leave, not for taking leave protected by the FMLA. Accordingly, as Peterson has not raised a genuine dispute of fact as to the cause of his indefinite suspension, he has failed to state a viable FMLA claim.

III.

CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment dismissing Peterson's action is

AFFIRMED.

8