# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

––––––––––––––

m 02-30401
Summary Calendar

––––––––––––––

ELVIN RAY WILLIAMS,

Plaintiff-Appellant,

VERSUS

ROY O. MARTIN LUMBER CO. LLC,

Defendant-Appellee.

––––––––––––––––––––

Appeal from the United States District Court
for the Western District of Louisiana
m 01-CV-317

––––––––––––––––––––

September 30, 2002

Before HIGGINBOTHAM, SMITH, and
CLEMENT, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has
determined that this opinion should not be
published and is not precedent except under the
limited circumstances set forth in 5TH CIR. R.
47.5.4.

Elvin Williams appeals a summary judgment
in favor of his former employer, Roy O.
Martin Lumber Co. LLC ("Martin"),[1] on

---

[1] The caption in Williams's complaint reads
"Elvin Ray Williams versus Roy O. Martin Lum-
ber Co., L.L.C., d.b.a. Colfax Creosoting Co."
The actual name of the Colfax site is "Colfax
Treating Company." Williams worked at Martin's
Colfax site, so the parties and the district court
(continued...)

Williams's claim of retaliatory discharge under the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2601 *et seq.* Williams also appeals three related procedural orders. We find no error and affirm.

I.

Williams worked as a utility laborer for Martin from July 1993 to April 2000. He frequently missed work, from a few hours to a few days, in part because his daughters suffer from sickle cell anemia. For most of Williams's tenure at Martin, his supervisor, Larry Lindsay, tried to accommodate Williams's absences. In particular, Lindsay allowed Williams to used accrued annual leave to care for his children; if Williams had no annual leave, Lindsay would allow him to take unpaid leave.

In December 1999, however, Martin began to enforce its leave policy more vigorously because of high rates of absenteeism and tardiness. These new measures fell especially hard on Williams, not only because of his afflicted daughters, but also because Martin suspected Williams was performing odd jobs for other employers on Martin's time. Lindsay and Guy Milazzo, the human resources manager, met with Williams in late December to discuss his excessive absences and tardiness. Lindsay and Milazzo required Williams to begin accounting for every time he missed work, not just the times he missed because of his daughters' affliction.

Williams nonetheless missed work five

times in January 2000, none related to his daughters' health. He twice missed part of the workday to take his daughters to the dentist. On the same day, he arrived late after taking them to school and left early without explanation. He also missed a day of work for a court appearance. In late January, therefore, Lindsay and Milazzo again met with Williams and warned him that further absences or tardiness would result in progressive discipline of a one-day suspension, then a three-day suspension, then discharge.

This meeting did little to affect Williams's attendance; he missed work three times in the first two weeks of February. Again, none was related to his daughters' physical problems. After the third absence, Lindsay, Milazzo, and Albert Johnson, the plant manager, met with Williams to discuss these absences and to suspend him for one day.

Williams then failed to report to work after his one-day suspension, which promptly earned him another meeting on February 25 with Lindsay, Milazzo, and Johnson; a three-day suspension; and a warning that future absences or tardiness would result in discharge. Lindsay, Milazzo, and Johnson also asked Williams whether he wanted to apply for FMLA leave to care for his children, but Williams specifically declined to request FMLA leave.

After Williams returned from his suspension, his attendance improved briefly. Aside from an authorized absence on March 1, to care for his daughters, he did not miss any work during March. He did arrive late for work on April 5, but Martin excused the tardiness at the time because of Williams's improved attendance record in March.

With no earlier notice, Williams announced

[1] (...continued)
often referred to the defendant as "Colfax." In this appeal, however, the caption refers only to "Roy O. Martin Co. LLC"; we therefore refer to the defendant as "Martin."

around noon on April 24 that he needed the afternoon off to care for his daughters. Lindsay refused to give permission, because he needed Williams for a busy afternoon at the site. Williams left anyway and did not return, so Martin fired him the next day.

## II.

Williams filed a complaint with the Equal Employment Opportunity Commission, which did not pursue the investigation but issued a right-to-sue letter. Williams then sued Martin, asserting claims for retaliatory discharge under (1) title VII, (2) 42 U.S.C. § 1981, (3) the FMLA, and (4) LA. REV. STAT. ANN. § 23.332. The district court entered a protective order during pre-trial discovery to restrict discovery of Martin's employee personnel files to records related to absenteeism and FMLA leave. At the pre-trial conference, the court confined the questions for trial to the FMLA claim only.

The parties then filed cross-motions for summary judgment. Just three days before the court granted Martin's motion for summary judgment on the FMLA claim, Williams moved to strike certain exhibits attached to Martin's motion for summary judgment and for sanctions for discovery violations. The court granted Martin's motion for summary judgment and dismissed, as moot, the motion to strike and for sanctions.

## III.

We review a summary judgment *de novo* and apply the same standards as did the district court. *TIG Ins. Co. v. Sedgwick James*, 276 F.3d 754, 759 (5th Cir. 2002). Summary judgment is appropriate only if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," when viewed in the light most favorable to the non-moving party, "show that there is no genuine issue as to any material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50 (1986). A dispute about a material fact is "genuine" if the evidence would permit a reasonable jury to return a verdict for the non-moving party. *Id.* at 248. The court must draw all reasonable inferences in favor of the non-moving party. *Id.* at 255.

At the same time, not all disputes or all inferences are reasonable, and the court is not obliged to accept mere assertions. Thus, once the moving party initially has shown "that there is an absence of evidence to support the non-moving party's cause," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986), the non-moving party must produce "specific facts" showing a genuine factual issue for trial. FED. R. CIV. P. 56(e); *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The non-moving party cannot rest on mere conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic arguments, none of which will substitute for specific facts showing a genuine issue for trial. *TIG Ins.*, 276 F.3d at 759.

## IV.
### A.

Congress adopted the FMLA "to meet the needs of families in a manner that accommodates the legitimate interests of employers." *Bocalbos v. Nat'l W. Life Ins. Co.*, 162 F.3d 379, 382 (5th Cir. 1998); *see also* 29 U.S.C. § 2601(b)(1)-(3). "The enactment of the FMLA was predicated on two fundamental concerns—the needs of the American workforce, and the development of high-performance organizations." 29 C.F.R. § 825.101(b).

The FMLA both gives employees certain entitlements and forbids employers from interfering with those entitlements.[2] *Bocalbos*, 162 F.3d at 383. Among its entitlements, the FMLA gives an eligible employee a right to twelve weeks of unpaid leave within a twelve-month period to care for a newborn or newly adopted child, for a close family member who has a "serious health condition," or for oneself if one has a "serious health condition." 29 U.S.C. § 2612(a)(1). An employee may take this leave intermittently if medically necessary. 29 U.S.C. § 2612(b)(1). After an employee returns from FMLA leave, he is entitled to return to the same or an equivalent job. 29 U.S.C. § 2614(a)(1). The FMLA also forbids an employer from interfering with the exercise of these rights and from discriminating among employees who exercise these rights. 29 U.S.C. § 2615(a).

When an employee needs FMLA leave for foreseeable medical treatment for himself or family members, he has certain duties to his employer. First, he must make a reasonable effort to schedule the treatment to avoid undue disruption to the employer's operations. 29 U.S.C. § 2612(e)(2)(A). Second, he must provide the employer with thirty days' advance notice of the treatment, or as much notice as practicable if notice cannot be given thirty days in advance. 29 U.S.C. § 2612(e)(2)(B).

B.

Williams alleges that Martin retaliated for the exercise of FMLA rights. In *Chaffin v. John H. Carter Co.,* 179 F.3d 316 (5th Cir. 1999), we held that the *McDonnell Douglas* burden-shifting scheme for federal anti-discrimination claims applies to an FMLA retaliatory discharge case.[3] *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

*McDonnell Douglas* burden shifting has three stages in an FMLA retaliatory discharge case. First, the plaintiff must establish a *prima facie* case of retaliation by showing that he (1) exercised rights guaranteed by the FMLA and (2) was discharged (3) as a result of exercising those rights. *Bocalbos*, 162 F.3d at 383. Second, once the plaintiff establishes a *prima facie* case, the defendant must articulate a legitimate and non-retaliatory reason for the discharge. *Id.* Third, after the defendant offers such a reason, the burden returns to the plaintiff to "produce substantial probative evidence that the proffered reason was not the true reason . . . and that the real reason was the plaintiff's" exercise of FMLA rights. *Chaffin*, 179 F.3d at 320. The plaintiff cannot succeed merely by showing that the proffered reason was pretextual, but must also show that retaliation "was the real reason." *Id.*

C.

---

[2] The FMLA does not apply to all employers or employees . For example, the act covers only employers with more than 50 employees, 29 U.S.C. § 2611(4), and employees who worked at least 1,250 hours in the last twelve-month period, 29 U.S.C. § 2611(2)(A). The parties, however, do not dispute that the FMLA applies to both Martin and Williams.

[3] We reserved the question whether *McDonnell Douglas* burden shifting applies to a claim for denial of the underlying FMLA benefits. 179 F.3d at 319 n.13. For a persuasive explanation why *McDonnell Douglas* burden shifting should not apply to such a claim, see *Diaz v. Fort Wayne Foundry Corp.*, 131 F.3d 711 (7th Cir. 1997). *Diaz* also concludes, however, that "[i]t is not clear what a burden-shifting approach could add" to a retaliation case. *Diaz*, 179 F.3d at 713.

4

As the district court did, and as so often happens with *McDonnell Douglas* burden shifting, we assume *arguendo* that Williams presented a *prima facie* case of retaliatory discharge. We therefore concentrate on two main questions: (1) whether Martin articulated a legitimate, non-retaliatory reason for the discharge and (2) whether Williams raised a genuine issue of material fact that any proffered reason was pretextual *and* that the true reason for his discharge was to retaliate against him for exercising his FMLA rights.

We agree with the district court that Martin articulated a legitimate and non-retaliatory reason for Williams's discharge, i.e., his habitual and unexcused absences and tardiness. Martin notified Williams of the new measures to enforce its leave policies in late 1999. Nevertheless, Martin missed work on eight separate occasions in the first six weeks of 2000, unrelated to his daughters' sickle cell anemia.[4]

Moreover, Williams's supervisors met with him on four separate occasions to remind him of the need for regular work attendance, to discipline him for absences, and to warn him that future violations would result in discharge. Martin then excused Williams's first absence in April 2000 because of Williams's improved attendance in March 2000, but Martin apparently reached its wits end when Williams disobeyed Lindsay's direct order not to leave work on April 24, 2000,

purportedly to care for his daughters.[5] Against this long record of absenteeism and tardiness, Martin has more than satisfied its burden to articulate a legitimate and non-retaliatory reason for discharging Williams.

We further agree with the district court that Williams produced no evidence to raise a genuine issue of material fact that this proffered reason was pretextual and that Martin *really* discharged him for exercising his FMLA rights. Though a scintilla of evidence will not suffice to defeat a motion for summary judgment, Williams could not produce even that. As the district court aptly stated, "[n]othing in the record suggests that [Martin] harbored a secret motive to deny Williams['] FMLA rights or to retaliate against him for the assertion of those rights."

To the contrary, Martin seems the very picture of a family-friendly employer. Lindsay flexibly allowed Williams to take off work from 1993 through 1999 to care for his daughters. Martin also gave Williams repeated chances to improve his work attendance before finally discharging him. Williams's supervisors even encouraged him to apply for FMLA leave, but he refused their entreaties.[6] That Martin finally fired Williams after he claimed to leave work to care for his daughters cannot refute the overwhelming evidence of his poor attendance record and Martin's good faith; otherwise, an employer could never discharge

---

[4] Williams twice missed work to take his daughters to the dentist, but a dental appointment is not a "serious health condition" under the FMLA. 26 U.S.C. § 2601(11); *see also* 29 C.F.R. § 825.114(b).

---

[5] Williams failed to give reasonable notice to Martin of his need for leave as required by the FMLA. 29 U.S.C. § 2612(e)(2).

[6] Martin was anything but a heartless employer. At Martin's request, Lindsay once bailed Williams out of jail after he had been arrested outside of work for driving while intoxicated.

5

or even discipline an employee for good reason in proximity to an allegedly protected act.

### V.

Williams appeals three procedural orders. He contends that the district court improperly entered (1) an order dismissing his motion to strike and for sanctions as moot, (2) a pre-trial order limiting the questions for trial to the FMLA claim, and (3) a protective order restricting discovery of Martin's employee personnel files. We review each kind of order for abuse of discretion.[7]

### A.

Williams filed a motion to strike and for a finding of contempt and sanctions three days before the district court entered summary judgment. Accordingly, the court dismissed the motion to strike and for sanctions as moot. Williams appeals the dismissal.

Williams primarily sought to strike five exhibits related to Samuel Bass's employment at Martin, which exhibits were attached to Martin's motion for summary judgment.[8]

These exhibits came from Bass's personnel files. Martin used these five exhibits to counter Williams's claims of racial discrimination. The exhibits show that Martin fired Bass, who is white, for a similar record of absenteeism at roughly the same time it fired Williams, who is black.

Williams complained in his motion, and Martin admits on appeal, that Williams did not receive these documents during the initial discovery phase before the parties submitted their motions for summary judgment. Martin explains that it failed to produce these documents because of Bass's unusually complicated employment history at Martin.[9] Martin had hired and released Bass three times, so Bass had three separate personnel files at Martin. Although Williams reviewed and receive documents from at least one of these files during discovery, he did not review and receive documents from all three files. Martin attributes this oversight to inadvertence, which Williams does not dispute.

The district court did not abuse its discretion by dismissing the motion as moot. The Bass exhibits did not prejudice Williams, because the court did not cite them in its memorandum opinion, nor did it discuss Bass at all. Moreover, it is not as if Martin stood by and withheld evidence favorable to Williams.

---

[7] *United States v. $9,041,598.68*, 163 F.3d 238, 252 (5th Cir. 1998) (orders on motions to strike and for sanctions); *Rushing v. Kansas City S. Ry.*, 185 F.3d 436, 509 (5th Cir. 1999) (pre-trial orders); *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 28 F.3d 1388, 1394 (5th Cir. 1994) (protective orders).

[8] Williams also complained about failure to produce documents related to Keith McCain, Jared Wittington, Terry Hazelton, and Patrick Clark, also employees of Martin. Martin explains, however, that Williams either received or had the opportunity to inspect these documents if they existed. Williams does not controvert this explan-
(continued...)

[8](...continued)
ation and hence has waived his claims on appeal related to these four employees. *United States v. Thibodeaux*, 211 F.3d 910, 912 (5th Cir. 2000).

[9] Martin did not have an opportunity to respond to Williams's motion to strike, because the district court dismissed the motion as moot three days after Williams filed it. Martin now responds to the motion in its brief, and Williams does not controvert its explanation.

The documents, after all, show that Martin did not discriminate against black employees who exercised their FMLA rights.

Williams, then, could not have used these documents to aid his case. Moreover, he was fully aware of Bass's employment history§§Williams stipulated, before moving for summary judgment, that Bass was a white employee whom Martin fired in early 2000 for excessive absenteeism.

Finally, Williams had ample time to examine these documents or request further discovery after receiving them. Martin filed its motion for summary judgment, with the Bass exhibits attached, on January 31, 2002. Williams did not file his response until March 8, and the discovery phase was not scheduled to end until April 7. Under these circumstances, any error was harmless. FED. R. CIV. P. 61; *Tagupa v. Bd. of Dirs.*, 633 F.2d 1309, 1312 (9th Cir. 1980).

### B.

After a pre-trial conference, the district court entered an order limiting the questions for trial to the FMLA claim. Williams argues that this order effectively dismissed his racial discrimination claims without adequate notice and an opportunity to respond.

The court did not abuse its discretion. Rule 16, FED. R. CIV. P., vests particularly broad authority in the district court to manage the course of litigation with a pre-trial conference and order. *Barrett v. Atl. Richfield Co.*, 95 F.3d 375, 380 (5th Cir. 1996). The court had good reason to limit the questions for trial to the FMLA claim, because the record contains no evidence whatsoever of racial discrimination. Furthermore, Williams never objected to the pre-trial order after the court

entered it, and we will not hear arguments or objections not presented to the district court. *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1071 n.1 (5th Cir. 1994) (en banc). We also note that Martin briefed the racial discrimination claims in its motion for summary judgment, so the summary judgment can be construed as a ruling on the racial discrimination claims as well as the FMLA claim.

### C.

In the early stages of discovery, Williams moved to compel inspection of Martin's employee personnel files, and Martin moved for a protective order. The district court denied Williams's motion and entered a protective order to limit discovery of the personnel files to records of absenteeism and FMLA leave. Williams argues that this order impeded his discovery of relevant facts.

The court did not abuse its discretion. Williams apparently believes that he had an inviolable right to rummage through these files. Not so. Employee personnel files contain much irrelevant but sensitive and potentially embarrassing information, for example, alimony and child support garnishment, tax records, and drug test results. Martin understandably wanted to protect its employees' privacy rights against needless discovery.

Williams asserts that the protective order prevented him from discovering relevant facts about the kinds of leave taken by employees, but this information comes within the rubric of "absenteeism" in the order, and the record shows that he received the information. In short, the protective order judiciously balanced the privacy rights of Martin's non-party employees with Williams's right to relevant and needed information.

AFFIRMED.