Filed 9/29/20; certified for pub. 10/23/20 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALFONSO LARES, | B293850 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC634168) |
| v. | |
| LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court for Los Angeles County, Daniel S. Murphy, Judge. Affirmed.

Panitz Law Group, Eric A. Panitz; and Craig T. Byrnes for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Lann G. McIntyre, Jeffrey S. Ranen and Ashleigh R. Kasper for Defendant and Respondent.

This appeal involves the discipline provision in a collective bargaining agreement (CBA) between defendant Los Angeles County Metropolitan Transit Authority (MTA) and the union representing all operations employees of MTA. Under a section of that provision (the absenteeism rule), an employee is subject to progressive discipline, up to and including termination, if he or she has a certain number of absences. To avoid discipline, the employee may remove (or clear) an absence from his or her count by not having any absences for 60 consecutive calendar days. Certain kinds of absences, however, are expressly excluded from the absenteeism rule. One kind of excluded absence is an absence covered under the federal Family and Medical Leave Act (29 U.S.C. §§ 2601 et seq.) (FMLA) or the California Family Rights Act (Gov. Code, § 12945.2) (CFRA).

Plaintiff Alfonso Lares, a bus operator for MTA, was fired after he had eight non-excluded absences. There is no dispute that more than 60 calendar days had passed between absences on two occasions (i.e., two of the absences would have been cleared from his count), but Lares had taken leaves under the CFRA during each of those periods, and MTA did not count those days as part of the 60-day clearance period. The question presented in this appeal is: Does MTA's failure to count the days an employee is on CFRA leave when calculating the 60-day clearance period violate the CFRA? We conclude, as did the trial court, it does not. Accordingly, we affirm the summary judgment in favor of MTA on Lares's claims for retaliation based upon his use of CFRA leave, failure to prevent retaliation, and interference with CFRA leave.

# BACKGROUND

A.    *The Absenteeism Rule*

The CBA addresses three types of non-attendance in its discipline provision (article 27):  absences (section 5), missouts (section 6), and absent without permission (AWOP) (section 7).  Absences are defined as "[a]n absence period of one (1) or more consecutive days or a portion of a day greater than one (1) hour."[1]  A missout occurs when an operator fails to report at the scheduled time for his or her assignment, unless the operator notifies division management at least 40 minutes prior to his or her scheduled report time.  An AWOP occurs when an operator fails to report to work and does not notify division management at all, or notifies management more than eight hours after the employee's shift was scheduled to begin.

Each type of non-attendance is subject to a different disciplinary rule.  The only rule at issue in the present case is the absenteeism rule, set forth in section 5 of article 27 of the CBA (hereafter section 5).

Section 5 begins by stating:  "Operator attendance at work must be acceptable.  Failure to maintain an acceptable attendance record will subject the employee to suspension or discharge."  Before setting out the specifics of the absenteeism rule, however, the section states:  "Certain absences indicated as follows will be excluded from the application of this rule:  1) Jury duty; 2) military leave; 3) court appearances under

---

[1]    Thus, if an employee is absent on three consecutive days, it would count as a single absence, but it would total 24 hours (i.e., three eight-hour shifts).

3

subpoena; 4) medical appointments upon at least forty-eight (48) hours' notice and subsequent proof of such visits; 5) bereavement leave; 6) day of admission of an immediate family member to a hospital; 7) removal from service by [MTA's] doctor; 8) occupational injury or illness; 9) earthquake, fire or flood if the employee is personally affected; 10) absences authorized by the Transportation Manager, which he/she deems as having sufficient merit and 11) absences covered under the Family Care and Medical Leave Act."

Section 5 then sets forth the rules that apply to absences. It defines "Excessive Absenteeism" as six or more absences, or three absences totaling at least 60 hours, and sets out a progressive discipline schedule. It provides that a sixth absence (or three or more absences totaling at least 60 hours) results in counseling of the employee; a seventh absence (or four or more absences totaling at least 60 hours) results in a suspension of up to three days; and an eighth absence (or five or more absences totaling at least 60 hours) results in a disciplinary hearing that may result in discharge of the employee.

Section 5 also sets forth the method for clearing absences from an employee's count, under the heading "Counting of Instances." It states: "Once an instance of absence has occurred, any period of sixty (60) calendar days without an absence will remove one (1) instance of absence from the Operator's count. Absences from work due to occupational illness or injury, reduction in force, suspensions, personal leave of absence, off with permission, or other excused absences will be deducted in calculating the sixty (60) day period."

4

B.   *MTA's Record-Keeping for Absences*

MTA keeps track of each operator's absences (as well as other performance issues) using "Dept. HR" software.  When an operator is not going to come to work as scheduled, he or she must call a transportation operations supervisor and tell the supervisor why he or she will not be coming in, and when he or she expects to return to work. That information is entered into the Dept. HR software.

Vazgen Vartanian, a principal software engineer for MTA, worked on the development of Dept. HR, including the creation of the algorithm used to implement the absenteeism rule.  According to his deposition testimony, codes were created for each type of absence, including both absences that count for disciplinary purposes and absences that are expressly excluded from the absenteeism rule.  (In this opinion, we refer to absences that are counted under the absenteeism rule as "charged" absences, and absences that are expressly excluded from the absenteeism rule as "non-charged" absences.)  When a code for a non-charged absence is entered into Dept. HR, that absence is neither counted as an absence nor counted for purposes of the 60-day absence clearance period.  In other words, if an operator had a one-day non-charged absence during a clearance period, the software would not clear a charged absence until 61 days had passed.

C.   *Lares's Employment With MTA*

Lares was employed by MTA as a bus operator from 2004 until March 2015.  Over the course of his employment, Lares requested, and

was granted, 10 leaves of absence under the FMLA and CFRA.[2]  These leaves of absence were not counted as absences for purposes of the absenteeism rule.  Lares also had numerous charged absences, resulting in hundreds of hours of work lost.  However, until the last year of his employment, Lares was able to clear enough absences (by going without a charged absence for 60-day clearance periods) to avoid the third level of discipline, although he received first level discipline (verbal counseling) many times, and second level discipline (suspension) twice.

On September 27, 2014, Lares called out of work with the flu.  Because this was his sixth charged absence without a 60-day clearance, he received verbal counseling.  In October and November 2014, Lares took 16 days of FMLA/CFRA leave after his wife gave birth to their child.  On December 2, 2014, Lares called in sick.  Although more than sixty total days had passed since his last absence, fewer than 60 *counted* days had.  Therefore, he received a three-day suspension for this absence.  Lares arranged to serve his suspension from January 6, 2015 through January 8, 2015, when his wife was scheduled to have surgery.

Lares's wife developed complications from the surgery, and Lares took FMLA/CFRA leave from January 13, 2015 to February 7, 2015 to care for her.  On February 13, 2015, Lares called the transportation

---

[2]     In accordance with the CFRA, MTA allows its employees up to 12 weeks (480 hours) of FMLA/CFRA leave in a "rolling" 12-month period.  The leave is unpaid, although employees may use their accrued sick leave or vacation allowance for some or all of the leave.

operations supervisor before his shift.  According to MTA's records, Lares told the supervisor he was sick with a cold and would not be coming into work.  As this was his eighth charged absence, MTA held a formal disciplinary hearing to determine whether Lares would be discharged.  At the hearing, which was held on March 3, 2015, Lares stated that he had called transportation operations supervisor Norma Perera on the morning of his absence and asked her for an extension of his FMLA/CFRA leave to care for his wife.  He said that Perera told him FMLA/CFRA leave was not available for him at that time.  She said he would have to call in sick, so he did.

After the hearing, Sharika Foster, MTA's assistant transportation operations manager (who supervised the division in which Lares worked, and who had presided over the hearing), conducted an investigation.  She contacted Perera, who informed Foster that she had not taken Lares's call because she was on vacation on February 13, 2015.  Foster then listened to a recording of the call Lares made on that day.  Transportation operations supervisor Cynthia Garrett took the call.  On the recording, Lares sounded sleepy and told Garrett that he was calling in sick for one day due to a cold; there was no mention of Lares wanting to take FMLA/CFRA leave.

Foster then spoke with Peter Mellon, the director of transportation operations.  After reviewing reports regarding Lares's attendance history, as well as his missout, discipline and counseling,

7

awards and commendations, and accident histories,[3] Foster recommended that the appropriate discipline for Lares's eighth absence was termination. Mellon agreed. The written decision terminating Lares employment for excessive absenteeism was signed by Foster on March 10, 2015.

C.    *The Present Lawsuit*

Lares filed the instant lawsuit in September 2016. The operative second amended complaint alleges four causes of action: (1) retaliation for frequent use of CFRA leave; (2) retaliation in violation of Government Code section 12940, subdivision (h) based upon Lares's use of CFRA leave; (3) failure to prevent retaliation in violation of Government Code section 12940, subdivision (k); and (4) interference with the use of CFRA leave.

MTA and Lares brought cross-motions for summary judgment/ summary adjudication. The primary issue raised in both motions was whether MTA's absence clearance policy—i.e., not to count days on which an operator is on CFRA leave when determining whether the operator has satisfied the 60-day clearance period—violated the CFRA by interfering with the operator's right to take CFRA leave or by

---

[3]    Those reports showed that Lares had been charged with five avoidable accidents (including one in which his bus ran over a patron), had numerous missouts (and was suspended three times under the progressive discipline schedule applicable to missouts), and had been subject to four formal disciplinary hearings (including one for using a cell phone while operating a bus, for which he received a 30-day suspension).

retaliating against the operator for taking that leave.[4] At the hearing on the motions, counsel for both parties agreed that resolution of the case turned on this legal issue, and that there were no factual disputes (although at the end of the argument, counsel for Lares stated there might be a factual dispute regarding whether MTA counts days absent on bereavement leave when determining whether an absence has been cleared).

The trial court concluded that, as a matter of law, MTA was not required to count the time Lares was on CFRA leave towards the 60-day absence clearance period, and therefore MTA did not violate the CFRA. Finding that Lares did not raise triable issues of material fact that MTA terminated him because he exercised his rights under the CFRA, the court granted MTA's motion for summary judgment, and denied Lares's motion for summary adjudication.

Lares filed a motion for reconsideration, which the trial court treated as a motion for a new trial and denied. Judgment was entered in favor of MTA, from which Lares timely filed a notice of appeal.

## DISCUSSION

Lares contends on appeal that MTA's absenteeism rule violates the CFRA because (1) it counts an employee's CFRA leave against the employee by extending the absence clearance period during its use; and

---

[4] Lares also raised an additional argument as to how MTA allegedly violated the CFRA by counseling operators regarding their CFRA leaves, but he does not make that argument in his appeal, so we need not discuss it.

(2) it treats CFRA leave worse than other types of leave. MTA argues that the absenteeism rule does not violate the CFRA because absence clearance is a benefit that is accrued by working (or being available to work), and the CFRA does not require that employees continue to accrue benefits while on CFRA leave. MTA also argues that it treats all types of excused leave the same under the absenteeism rule, and that Lares's assertion to the contrary is supported only by deposition testimony taken out of context that is insufficient to give rise to a disputed issue of material fact. MTA has the better argument.

The "CFRA, the California corollary to the federal [FMLA], 'is intended to give employees an opportunity to take leave from work for certain personal or family medical reasons without jeopardizing job security.'" (*Moore v. Regents of University of California* (2016) 248 Cal.App.4th 216, 233.) It makes it unlawful for an employer to refuse to grant a request by an employee who meets certain criteria "to take up to a total of 12 workweeks in any 12-month period for family care and medical leave," and to guarantee "employment in the same or a comparable position upon the termination of the leave." (Gov. Code, § 12945.2, subd. (a).) It also makes it unlawful for an employer "to refuse to hire, or to discharge, fine, suspend, expel, or discriminate against, any individual" for exercise their rights under the act, or "to interfere with, restrain, or deny the exercise of, or the attempt to exercise, any right" under the act. (Gov. Code, § 12945.2, subds. (l)(1), (t).)

The California Fair Employment and Housing Commission has promulgated regulations to implement and interpret the CFRA, which

10

regulations also incorporate by reference the federal regulations interpreting the FMLA to the extent the federal regulations are within the scope of the CFRA and not inconsistent with the California regulations.  (Cal. Code Regs., tit. 2, § 11096.)  Violation of the California regulations[5] (including the federal regulations incorporated by reference) "constitutes interfering with, restraining, or denying the exercise of rights provided by CFRA."  (Cal. Code Regs., tit. 2, § 11094, subd. (a).)

Lares contends that MTA's absenteeism rule violates section 11094, subdivision (b) of the California regulations in two ways.  That regulation states, in relevant part: "[I]f an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid CFRA . . . leave.  By the same token, employers cannot use the taking of CFRA . . . leave as a negative factor in employment actions, such as hiring, promotions or disciplinary actions; nor can CFRA . . . leave be counted against an employee under an employer's attendance policies."  (Cal. Code Regs., tit. 2, § 11094, subd. (b).)  Lares argues that MTA treats other kinds of leave differently than it treats CFRA leave when counting days for absence clearance, thus violating the first part of the regulation.  And he argues that MTA violates the second part of the regulation by extending the absence

---

[5]     Further reference to "California regulations" will be to title 2, article 11 of the California Code of Regulations.

11

clearance period by the number of days the employee is on CFRA leave. We begin with the latter argument.

### A. *The CFRA Does Not Require the Accrual of Absence Clearance Days While an Employee Is On CFRA Leave*

Lares argues that by failing to include days an employee spends on CFRA leave when calculating the absence clearance period, MTA causes the CFRA leave to "be counted against" the employee. (Cal. Code Regs., tit. 2, § 11094, subd. (b).) In making this argument, he relies upon *Schmauch v. Honda of America Manufacturing, Inc.* (S.D. Ohio 2003) 295 F.Supp.2d 823 (*Schmauch*), a federal district court case involving the FMLA and a no-fault absence policy that is similar in some respects to MTA's absenteeism rule.[6]

Under the policy at issue in *Schmauch*, if an employee's attendance dropped below 98 percent, he or she received progressive counseling. Time spent on FMLA leave and military leave did not count as an attendance occurrence, and was not part of the calculation of the attendance percentage. If the employee's attendance remained below

---

[6] No-fault absence (or attendance) policies are relatively common. They are called "no-fault" policies because they do not require the employee to present evidence of justification for an absence, such as a note from a doctor. They typically include limitations on the number of absences allowed and some mechanism for clearing some or all of the absences. (See *Bailey v. Pregis Innovative Packaging, Inc.* (7th Cir. 2010) 600 F.3d 748, 751.) Because the CFRA's provisions and regulations are similar to those of the FMLA, California courts often look to federal cases interpreting the FMLA when reviewing the CFRA, particularly where, as here, there are no California cases that address the issue before the court. (*Rogers v. County of Los Angeles* (2011) 198 Cal.App.4th 480, 487.)

12

98 percent after all the counseling, the employee was placed on an attendance improvement program (AIP). The AIP had three two-month segments, during which the employee was permitted certain numbers of "attendance occurrences" (two occurrences in the first segment, one occurrence in the second segment, and no occurrences in the third segment); an employee who failed to comply with the AIP was subject to immediate termination. If the employee took certain kinds of leave during an AIP segment, including FMLA leave (but not including leaves for bereavement, court appearance, or worker's compensation), that segment was extended by the number of days spent on those leaves. (*Schmauch*, *supra*, 295 F.Supp.2d at p. 826.)

The plaintiff in *Schmauch* was placed on AIP due to his attendance record. (*Schmauch*, *supra*, 295 F.Supp.2d at p. 826.) During the time he was on AIP, he took approved military and FMLA leaves, which prolonged the original six-month period of the AIP. (*Id.* at pp. 826-827.) A few days before the final segment of the prolonged AIP was scheduled to end, he had an attendance occurrence and his employment was terminated. (*Id.* at p. 827.) He filed a lawsuit against his employer, asserting, among other claims, that the employer violated the FMLA by prolonging his AIP due to the time he spent on FMLA leaves during the initial period of his AIP. (*Ibid.*)

Relying upon *Chaffin v. John H. Carter Co., Inc.* (5th Cir. 1999) 179 F.3d 316, which held that employers have an obligation under the FMLA not to penalize employees for exercising their rights under the FMLA, the district court, with little analysis, concluded that the

13

extension of an AIP "could be deemed penal in nature" because "an employee is permitted only a limited number of absences [during the AIP] and any unexcused absence is cause for termination." (*Schmauch, supra*, 295 F.Supp.2d at p. 829.) Therefore, the court found there was a triable issue of fact as to whether the employer's policy of extending the AIP discourages employees from taking FMLA leave. (*Id.* at pp. 831-832.)

We are not persuaded by the district court's analysis. An employee whose employment is terminated under a no-fault absence policy such as the one in *Schmauch* (or in the present case) is not penalized for taking FMLA or CFRA leave. Rather, the employee is penalized for having an unexcused absence within a period of a specific number of days during which he or she is scheduled (or available) to attend work. The employee's taking of FMLA or CFRA leave does not increase the number of scheduled work days (or available-to-work days) that the employee must remain absence-free. Thus, there is no "penalty" for taking FMLA or CFRA leave.

We believe the more accurate way to view the operation of a no-fault absence policy like MTA's absenteeism rule is the view expressed by the Seventh Circuit in *Bailey v. Pregis Innovative Packaging, Inc.*, *supra*, 600 F.3d 748 (*Bailey*). In *Bailey*, the no-fault attendance policy provided that an employee could be fired if he or she received 8 "points" during the preceding 12-months; each point is removed from the employee's count 12-months after it is imposed. If the employee takes

FMLA leave, the time spent on that leave is not counted for purposes of calculating the 12-month removal period. (*Id.* at pp. 749-750.)

The *Bailey* court reasoned that under of the policy for removing absenteeism points, the employee accrues the right to have an absenteeism point removed after he or she completes 12 months of work from the time the point was imposed. (*Bailey*, *supra*, 600 F.3d at p. 750, 752.) The court concluded that this right is an employment benefit. (*Ibid.*) The court also found that not counting the time an employee spent on FMLA leave when computing the 12-month period for absenteeism point removal did not violate the FMLA because the benefit (absenteeism forgiveness) is accrued only by working, i.e., it is a reward for working, and the FMLA does not require that an employee be allowed to accrue such benefits while on FMLA leave. (*Id.* at p. 752.)

Lares argues the *Bailey* court's analysis does not apply to this case because that court relied upon language in the FMLA that taking FMLA leave "shall not result in the loss of any employment benefit accrued prior to the date on which the leave commenced" (29 U.S.C. § 2614(a)(2)), and that an employee is not entitled to "the accrual of any . . . employment benefits during any period of leave" (29 U.S.C. § 2614(a)(3)(A)). He contends there is no such language in the CFRA or its implementing regulations and that, in fact, it is contrary to section 11092, subdivision (f) of the California regulations. While he is correct that the exact language cited by the court in *Bailey* does not appear in the CFRA or its regulations, the concepts the language expresses are consistent with the concepts expressed in the CFRA and its regulations.

15

For example, section 11089 of the California regulations provide that an employee who takes a leave under the CFRA is entitled to return to the same position or a comparable position with equivalent benefits, which the regulation defines to include "benefits *resumed* in the same manner and *at the same levels as provided when the leave began.*" (Cal. Code Regs., tit. 2, § 11089, subd. (b)(1), italics added.) In other words, the employee cannot lose any benefits he or she had accrued before taking CFRA leave. Moreover, by stating that the benefits resume at the same levels they were when the employee's leave began, the regulation implicitly acknowledges the employee is not entitled to accrue benefits while on CFRA leave.[7]

Contrary to Lares's assertion, section 11092, subdivision (f) does not affect the application of the *Bailey* court's analysis to this case. That regulation provides, in relevant part: "[I]f the employer's other unpaid personal or disability leaves do not allow for the continuation of benefits during these leaves, an employee taking a CFRA leave . . . shall be entitled to continue to participate in the employer's health plans, pension and retirement plans, supplemental unemployment benefit plans or any other health and welfare employee benefit plan, in accordance with the terms of those plans, during the period of the CFRA leave." (Cal. Code Regs., tit. 2, § 11092, subd. (f).) He contends

---

[7]     An exception to this is seniority. While the FMLA provides that an employee on FMLA leave is not entitled to accrue seniority while on leave (29 U.S.C. § 2614(a)(3)(A)), the California regulations provide that an employee is entitled to accrual of seniority while on CFRA leave (Cal. Code Regs., tit. 2, § 11092, subd. (e)).

16

that, because the regulation "allows for the continuation of such benefits when other paid [*sic*] leaves do not, absence clearing should continue during CFRA leave."  He is mistaken.  An employee "benefit" is not the same thing as a "health and welfare employee benefit plan." For example, paid vacation is an employee benefit that cannot reasonably be considered to be a health and welfare employee benefit plan; instead, it is a reward for working and is accrued based upon the time spent working (or available to work).  Similarly, the "benefit" of absence clearance is a reward for working without absences and is not a health and welfare employee benefit plan.

In short, we hold—with a caveat—that where, as here, an employer's no-fault absenteeism policy provides that an employee may clear absences that otherwise would count for purposes of disciplinary action by working (or being available to work) during a certain clearance period, the employer does not violate the CFRA by extending the absence clearance period by the number of days the employee was on CFRA leave during that period.  The caveat, and it is an important one, arises from section 11094 of the California regulations.

As Lares notes, section 11094 provides that "if an employee on leave without pay would otherwise be entitled to full benefits (other than health benefits), the same benefits would be required to be provided to an employee on unpaid CFRA . . . leave."  (Cal. Code Regs., tit. 2, § 11094, subd. (b).)  Since, as we conclude, the clearing of an absence is an employee benefit, this provision applies to MTA's absenteeism rule.  Therefore, the caveat to our holding is that there is no violation of the CFRA only if the employer extends the absence

17

clearance period by the number of days the employee was on *any* unpaid leave.

## B. *Lares Failed to Raise a Triable Issue of Fact That MTA Treats Other Kinds of Unpaid Leave Differently Than CFRA Leave*

In its summary judgment motion, MTA presented evidence that it treats all kinds of unpaid leave the same when determining whether an employee is entitled to have an absence cleared from his or her count. Lares contends he presented evidence that MTA counts three types of unpaid leave—jury duty, bereavement leave, and military duty leave— toward absence clearance, but does not count CFRA leave, thereby raising a triable issue of material fact.[8]  We disagree.

Under summary judgment law, "'[t]here is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof.'  [Citation.] In making this determination, 'the court may not weigh the plaintiff's evidence or inferences against the defendants' as though it were sitting as the trier of fact, [but] it must nevertheless determine what any evidence or inference could show or imply to a reasonable trier of fact.'" (*Colarossi v. Coty US Inc.* (2002) 97 Cal.App.4th 1142, 1149, italics omitted.)

---

[8]     Lares also includes vacation leave in this group, but vacation is paid leave.  Thus, section 11094, subdivision (b) of the California Regulations does not require that vacation leave be treated equally to CFRA leave.

In arguing that MTA does not treat all unpaid leave equally, Lares cites to deposition testimony by Sharika Foster (the assistant transportation operations manager), Bob Holland (MTA executive director of transportation), and Lares's union representative, Robert Gonzalez. But that testimony, when read in context, would not allow a reasonable trier of fact to find that MTA treats bereavement, jury duty, and military leaves differently than CFRA leave when calculating absence clearance periods.

First, the testimony by Foster that Lares cites to is a single passage from the first session of her deposition[9] in which Foster is being questioned about the provisions governing missouts, which have different clearance rules than the absenteeism rule. But even if Foster's statement—that jury duty and military time is considered active time for purposes of clearing missouts—could be deemed applicable to clearing absences (although Lares offered no explanation why it would be applicable), Foster corrected her statement in the second session of her deposition, and said that military time and jury duty do not count toward clearing missouts.

Second, although Holland (who was one of the signatories of the CBA) did testify in the deposition excerpt Lares cites that bereavement leave counted toward absence clearance,[10] Holland gave that testimony

---

[9] Although Lares cites to two locations in the record on appeal in support of his assertion, both citations are to the same pages of Foster's deposition.

[10] Lares also cites testimony by Holland that vacation counted toward absence clearance, but those citations are not relevant to this issue since vacation is paid leave.

19

without having the CBA before him. Later in the same deposition, after he was provided with a copy of the relevant section of the CBA, he testified that all 11 types of leave that are listed in section 5 as expressly excluded from the absenteeism rule do not count toward absence clearance. He later specifically testified that neither bereavement leave nor jury duty counted toward absence clearance. Contrary to Lares's assertion, when a deponent testifies from memory about a written policy, but later in the deposition corrects that testimony upon being shown the written policy, the deponent's earlier testimony is insufficient to raise a triable issue of fact because it would not be reasonable for the trier of fact to rely upon the uncorrected testimony under those circumstances.

Finally, although Gonzalez testified that jury duty counted toward absence clearance, Lares provided no evidence to show that Gonzalez, a union representative, had any first-hand knowledge of how MTA counted days for absence clearance. In contrast, MTA presented testimony by a principal software engineer (Vartanian) who was involved in the development of the software program MTA used to, among other things, track absences and absence clearances. And Vartanian testified that under the software program, any absence that is not chargeable under the absenteeism rule (such as jury duty, military leave, bereavement leave, or CFRA leave) does not count toward absence clearance.

Thus viewed in context, the evidence Lares relies upon would not allow a reasonable trier of fact to find that MTA treats jury duty, military, or bereavement leaves differently than it treats CFRA leave

20

for the purpose of absence clearance under the absenteeism rule. Therefore, in light of the parties' concession that all of Lares's claims turn on whether MTA violated the CFRA by not counting CFRA leave toward absence clearance, we find the trial court properly granted summary judgment in favor of MTA.

## DISPOSITION

The judgment is affirmed. MTA shall recover its costs on appeal.


WILLHITE, J.

We concur:


MANELLA, P. J.


CURREY, J.

21

Filed 10/23/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ALFONSO LARES, | B293850 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC634168) |
| v. | |
| LOS ANGELES COUNTY METROPOLITAN TRANSPORTATION AUTHORITY, | ORDER GRANTING PUBLICATION |
| Defendant and Respondent. | |

THE COURT:*

The opinion in the above-entitled matter filed on September 29, 2020, was not certified for publication in the Official Reports. Good cause appearing, it is ordered that the opinion in the above entitled matter be published in the official reports.

\*MANELLA, P. J.        WILLHITE, J.        CURREY, J.