

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 2-07-306-CV

PAMELA INGRAM                                                    APPELLANT

V.

WHITE SETTLEMENT                                                  APPELLEE
INDEPENDENT SCHOOL DISTRICT

-----------

### FROM THE 67TH DISTRICT COURT OF TARRANT COUNTY

-----------

## MEMORANDUM OPINION[1]

-----------

### I.  Introduction

In two issues, Appellant Pamela Ingram ("Ingram") argues that the trial

court erred (1) by granting a directed verdict in favor of Appellee White

Settlement Independent School District ("WSISD") and (2) by granting WSISD's

pretrial plea to the jurisdiction.  We affirm.

---

[1] *See* TEX. R. APP. P. 47.4.

## II. Factual and Procedural History

Ingram was employed for sixteen years at WSISD's central office until June 21, 2004. There is a dispute as to why she was let go. WSISD told Ingram she was terminated due to central office restructuring. However, Ingram was the only employee let go and, therefore, believed it was due to her medical condition.

WSISD contended that Ingram chose to ignore the real reason she was let go. In the summer of 2004, Ingram's supervisor, Mr. Welch, became the executive director of a multimillion dollar ($172 million) bond program. Neither Mr. Welch, nor the superintendent of WSISD, Susan Simpson, thought Ingram had the necessary skills to assist Mr. Welch in this new program; therefore, she was let go. Ingram agreed that the duties of Mr. Welch's new secretary after the restructuring were "different" than her duties and that WSISD's reason for termination was a valid one, if that was what happened.

However, Ingram alleged that she was terminated due to a prolonged medical condition. Ingram claimed that she was attacked verbally for taking time off and that her supervisor became increasingly "hostile" toward her. Furthermore, Ingram stated that on the day she was terminated her supervisor told her "now she could go home and take care of her health." She also asserted that in her post-termination interview, she was told that WSISD

2

terminated her for "missing too much time" and for performing personal business on company time.

Ingram's pertinent medical problems began in December 2002, when she began having medical problems that were eventually diagnosed as arthritis. Over the next year and a half, she saw four doctors, underwent numerous tests, had two MRI's, received a series of epidural injections in her back, took different medications (including steroid injections), and was prescribed ten weeks of physical therapy. During 2003, she had to take time off for her numerous doctor visits, and she would occasionally take an extended lunch break, arrive late, or leave early due to the pain and medication regimen.

Ingram described her condition as a severe burning pain that radiated in her shoulder and arm causing numbness in her hip. Both she and her husband testified that the pain prevented her from performing normal household duties. Furthermore, Ingram contends that she was absent during the workday "for minutes to an hour" because she was incapacitated by her condition or for treatment. However, WSISD asserted that Ingram told her doctor in May 2003 that she could do a number of things with little or no difficulty, including performing her job, jogging two miles, and participating in sports. Although she was involved in a ten-week therapy course in September 2003, some nine

3

months before she was let go, her condition had improved by about 25% at the time of her termination.

Ingram stated that she only used four and a half days of sick leave in 2003 and that she used her accumulated comp time or made up the work for any other time missed. WSISD stated that she was not absent from work much, and in 2004, her absences decreased; in fact she used only three and a half days of vacation time, comp time, or both.

After being terminated, Ingram filed a grievance under WSISD's grievance policy alleging unlawful termination due to age discrimination, violation of her right to sick leave granted by State law, and violation of the Family Medical Leave Act ("FMLA"). She appealed to the Board of Trustees where her grievances were eventually denied. In 2006, Ingram brought suit under four separate claims; only two of which are on appeal. Ingram alleged in one of her causes of action that WSISD had failed to notify her of her right to take intermittent leave under the FMLA (the interference claim), in response to which WSISD filed a plea to the jurisdiction. The trial court granted the plea to the jurisdiction and dismissed Ingram's interference claim, holding in its March 5, 2007 order that Ingram had "failed to exhaust her administrative remedies against" WSISD and that the trial court therefore lacked subject matter jurisdiction. The remaining causes of action were tried, but the trial court

4

granted a directed verdict as to her remaining claims, including her retaliation allegation under the FMLA (the protection claim). Specifically, WSISD moved for a directed verdict on this claim on two grounds, the first of which being that there was "no evidence that the plaintiff had a serious health condition that makes the employee unable to perform the functions of her position." The trial court granted the directed verdict, apparently on that ground, stating as follows:

> There is no FMLA violation under the facts of the case. At no time has there been any evidence that she had an inability to work due to a serious health condition. . . . It's got to be due to that serious health condition. Just because they take off, I don't disagree that she took. I don't disagree with that at all. But at no time, in fact, the evidence is opposite even from her own mouth that she was able at all times to work. And in all the other cases that are cited, people couldn't work because of the disabilities. They couldn't work because of whatever condition. In this situation, she stated, I, at all times, could work. She took off for physical therapy but she said I can work. And because of that, there was no FMLA. The FMLA doesn't apply. There is no leave. Therefore, I grant the directed verdict. And with that, this case is now complete.

This appeal followed only as to the FMLA interference and retaliation claims.

### III. First Issue — Retaliation Claim

In her first issue, Ingram complains that the trial court erred in granting a directed verdict on her FMLA protection claim based on the idea that she had no period of incapacity. This claim involved her assertion of retaliation by WSISD against her for invoking her FMLA rights.

5

## A. Standard of Review

A directed verdict is proper only under limited circumstances: (1) when the evidence conclusively establishes the right of the movant to judgment or negates the right of the opponent or (2) when the evidence is insufficient to raise a material fact issue. *See Prudential Ins. Co. v. Fin. Review Servs., Inc.*, 29 S.W.3d 74, 77 (Tex. 2000); *Ray v. McFarland,* 97 S.W.3d 728, 729-30 (Tex. App.—Fort Worth 2003, no pet.). In reviewing a directed verdict, we must credit favorable evidence if reasonable jurors could and disregard contrary evidence unless reasonable jurors could not. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005).

If the question to be decided is whether the losing party at trial raised a material fact issue, we consider all the evidence in the light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *Coastal Transp. Co. v. Crown Cent. Petroleum Corp*., 136 S.W.3d 227, 234 (Tex. 2004). If we determine that any conflicting evidence of probative value raises a material fact issue on any theory of recovery, then the directed verdict is improper because such an issue is for the jury to resolve. *Szczepanik v. First S. Trust Co.,* 883 S.W.2d 648, 649 (Tex. 1994).

6

The motion must specifically state what grounds merit the directed verdict. TEX. R. CIV. P. 268. However, the failure to specify a ground in the motion is not fatal if there are no fact issues raised by the evidence and the prevailing party is entitled to judgment as a matter of law. *Deutsch v. Hoover, Bax & Slovacek, L.L.P.*, 97 S.W.3d 179, 195 (Tex. App.—Houston [14th Dist.] 2002, no pet.) (citing *Tex. Employers Ins. Ass'n v. Page*, 553 S.W.2d 98, 102 (Tex. 1977)). We can consider any reason the directed verdict should have been granted, even if not stated in the party's motion. *Ibarra v. Nat'l Constr. Rentals, Inc.*, 199 S.W.3d 32, 37 (Tex. App.—San Antonio 2006, no pet.). We must affirm a directed verdict even though the trial court's rationale was erroneous if the directed verdict can be supported on another basis. *Cano v. N. Tex. Nephrology Assocs., P.A.*, 99 S.W.3d 330, 339 (Tex. App.—Fort Worth 2003, no pet.).

**B. Retaliation Claims**

In cases such as this, the initial burden is on Ingram to provide evidence of each element of her retaliation claim. The elements of an FMLA retaliation claim are that the employee availed herself of an FMLA protected right, that she was adversely affected by an employment decision, and that there was a causal connection between the employee's protected activity and the employer's adverse employment action. *Boriski v. City of College Station*, 65 F. Supp. 2d

7

493, 502 (S.D. Tex. 1999); *see also Chaffin v. John H. Carter Co.*, 179 F.3d 316, 319 (5th Cir. 1999); *Hodgens v. Gen. Dynamics Corp*., 144 F.3d 151, 161 (1st Cir. 1998). Next, WSISD must demonstrate a legitimate and non-discriminatory reason for its employment action against Ingram. *See Chaffin*, 179 F.3d at 320. Assuming the second step has been met, Ingram must then show that the reason offered by WSISD was a mere pretext for the prohibited retaliation adverse employment action. *See id.; see also St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 2747-48 (1993) (stating that the plaintiff retains the ultimate burden of persuasion on the issue of intentional discrimination).

## C. WSISD's Position

WSISD asserts that the directed verdict on Ingram's retaliation claim was proper for three reasons. First, Ingram had no protected right under the FMLA because she had no period of incapacity. Second, Ingram presented no evidence that exercising her rights under the FMLA caused the adverse employment action by WSISD. Third, Ingram presented no evidence that the reason offered by WSISD for Ingram's termination was a pretext for prohibited retaliation.

Initally, with respect to WSISD's first argument, we must look at 29 C.F.R. § 825.114(a), entitled, "What is a 'serious health condition' entitling an employee to FMLA leave?" It provides in part as follows:

8

(a) . . . [A] "serious health condition" entitling an employee to FMLA leave means an illness, injury, impairment, or physical or mental condition that involves:

. . . .

(2) . . . . A serious health condition involving continuing treatment by a health care provider includes any one or more of the following:

. . . .

(iii) Any period of incapacity or treatment for such incapacity due to a chronic serious health condition. A chronic serious health condition is one which:

> (A)Requires periodic visits for treatment by a health care provider . . . .
>
> (B) Continues over an extended period of time . . . and
>
> (C) May cause episodic rather than a continuing period of incapacity[.]

. . . .

(v) Any period of absence to receive multiple treatments . . . by a health care provider . . . for a condition that would likely result in a period of incapacity of more than three consecutive calendar days in the absence of medical intervention or treatment, such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical therapy), kidney disease (dialysis).

29 C.F.R. § 825.114(a) (2005).

Thus, for purposes of this case, Ingram was entitled to FMLA leave if she had an illness that involved continuing treatment by a healthcare provider, (a)

9

which encompassed any period of incapacity due to a chronic serious health condition, that is, one that required periodic treatment by a healthcare provider which continued over an extended period of time and which may have caused episodic incapacity in lieu of continuing incapacity, or (b) which encompassed a period of absence to receive multiple treatments for a condition that, without such treatment, would likely have resulted in incapacity of more than three consecutive calendar days, such as physical therapy for severe arthritis.

"Incapacity" is defined in the same section as "inability to work, attend school or perform other regular daily activities due to the serious health condition, treatment therefore, or recovery therefrom." *Id*. § 825.114(a)(2)(i).

It appears logical that for a work-related FMLA leave, the claimant must show that her condition affected her abilities at work as set forth in 29 C.F.R. § 825.114. The evidence clearly showed that Ingram was able to work throughout her illness, particularly in 2004 when she was terminated. She testified as follows:

Q. But you're, in fact, are able to do your job, you were able to do your job, weren't you?

A. I did it to the best of my ability, yes.

 . . . .

Q. So your testimony is that you were able to do the functions of your job?

10

A. Yes.

    . . . .

Q. . . . And our record shows that you missed about three and a half days, does that sound right?

A. Yes, sir.

Ingram testified that she told her doctor the following:

Q. You could run or jog two miles with some difficulty?

A. Well, I didn't do that often, yes.

    . . . .

Q. You could climb up a flight of stairs without any difficulty?

A. Um-hum.

Q. Is that correct?

A. Well, I didn't have any stairs, but I guess I could have.

    . . . .

Q. Participate in sports and games as you would like, correct?

A. Right.

    . . . .

Q. And you could do your work?

A. Yes.

Q. You weren't disabled from doing anything at work?

A.  No.  I could do my work.

She also testified as follows:

Q.  And you testified earlier that this 2003, September 2003, which is about nine months before you were terminated, therapy was a ten-week course?

A.  Yes, ma'am.

Q.  So you were gone -- you took off early twice a week for ten weeks?

A.  Yes, ma'am.

. . . .

Q.  And then likewise, you just testified about having some epidurals in May of 2004, March, April and May?

A.  Yes, ma'am.

Q.  And you said those were scheduled for what time of day?

A.  I believe it was 7:15 in the morning.

Q.  You came in late those days?

A.  Just about 15, 30 minutes.

. . . .

Q.  So your testimony is that you were late because you had a doctor's appointment?

A.  Yes, ma'am.

Q.  And this lunch hour, you took a lot of long lunches, I understand?

12

A.  No, not really.

Q.  Sometimes you'd stay two hours, you left at 11:00 or you came back at 2:00, I think?

A.  If I did that, it was I -- going home, took my medication.  The medication made me feel funny right at first or to make it work.  I'd go home, take it, lay down for a little bit, let it get to work, and then come back to work.  But I always made up my time.

. . . .

Q.  So just so the jury has some idea, how often would you do it, once a month?

A.  Maybe.

Q.  So what about twice a month?

A.  Maybe, possibly.

Q.  What are we talking about now?

A.   Maybe going home and, you know, taking my medication -- having to take my medication during the most intense period of my illness.  Yeah, it may have been twice a month.

Q.  And what other period of time are we talking about?

A.  On lunch.

Q.  No, which period of time --

A.  Oh, I would say probably January to -- well, maybe December of 2003, or I'm sorry, of 2004.

Under the appropriate standard of review, we hold that Ingram failed to show that she was incapacitated as that term is defined in the statute.

13

With regard to 29 C.F.R. § 825.114(a)(2)(v), regarding absence involving multiple treatments, it was necessary for Ingram to show that her condition, absent medical intervention or treatment, "would likely result in a period of incapacity of more than three consecutive calendar days." *See* 29 C.F.R. § 825.114(a)(2)(v). Ingram makes the blanket statement that the "medical records and testimony of Ingram and her husband are more than sufficient evidence to support a jury inference that Ingram's condition would have resulted in three days or more days of incapacity in [the] absence of medical intervention." First, Ingram does not point to any item in her fifty-plus pages of medical reports to support her assertion. An appellate court is not required to search the appellate record, with no guidance from the briefing party, to determine if the record supports the party's argument. *Hall v. Stephenson,* 919 S.W.2d 454, 466-67 (Tex. App.—Fort Worth 1996, writ denied). Also, "we know of no authority obligating us to become advocates for a particular litigant through performing their research and developing their argument for them." *Tello v. Bank One*, *N.A.*, 218 S.W.3d 109, 116 (Tex. App.—Houston [14th Dist.] 2007, no pet.). Thus, an inadequately briefed point may be waived on appeal. *Hall,* 919 S.W.2d at 467*; see also Fredonia State Bank v. Gen. Am. Life Ins. Co.*, 881 S.W.2d 279, 284-85 (Tex. 1994) (discussing "long-standing rule" that point may be waived due to inadequate briefing). Second, there is no

14

expert testimony with regard to any untreated condition resulting in a three day absence. And third, Ingram does not point us to evidence in the record where any lay testimony indicates a three day absence would result.

She also directs us to the language in 29 C.F.R. § 825.114(a)(2)(v) regarding "severe arthritis (physical therapy)." A fair reading of that statutory section in its entirety indicates that this portion of part (v) is indicative of examples of "treatment," such as chemotherapy for cancer, physical therapy for severe arthritis, and kidney dialysis for disease. Any periods of absence alluded to by Ingram did not involve physical therapy for severe arthritis. As such, her argument is a non-starter. Therefore we hold that there is insufficient evidence that she was entitled to an FMLA leave under subsection (v).

Consequently, we cannot say that the trial court erred in granting the directed verdict on her retaliation (protection) claim since the evidence demonstrates that Ingram was not incapacitated due to a chronic serious health condition, nor has she shown that subsection (v) was applicable to her. That being the case, WSISD could not retaliate against her regarding an FMLA leave to which she was not entitled. Ingram's first issue is overruled.

## IV. Second Issue—Interference Claim

As set out by Ingram, to prevail on an FMLA interference claim, she must establish the following: (1) she was eligible for the FMLA's protections, (2) her

15

employer was covered by the FMLA, (3) she was entitled to leave under the FMLA, (4) she provided sufficient notice of her intent to take leave, and (5) her employer denied her FMLA benefits to which she was entitled. *Hoge v. Honda of Am. Mfg., Inc.*, 384 F.3d 238, 244 (6th Cir. 2004).

It is axiomatic that subject matter jurisdiction is essential for a court to decide a case before it. *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 553-54 (Tex. 2000). If a party alleges that subject matter jurisdiction is absent, a plea to the jurisdiction may be the appropriate vehicle to raise that issue. *Id*. at 554. Exhaustion of administrative remedies is a prerequisite for a court to have subject matter jurisdiction. *Wilmer-Hutchins Indep. Sch. Dist. v. Sullivan*, 51 S.W.3d 293, 294 (Tex. 2001).

In the case before us, WSISD asserts that Ingram brought a claim for retaliation against WSISD in her grievance process but did not assert any interference claim, that is, that she was not informed of her right to FMLA leave. Therefore, because the interference claim was not brought during the administrative claim process, the trial court was without jurisdiction to entertain the interference claim.

Ingram responds with a two-fold argument. First, she argues that it is not necessary to have asserted the interference claim because that claim is "like or related to" her retaliation claim. Second, she is not required to have exhausted

16

her administrative remedies with respect to the interference claim because it is a claim based on federal statutory rights. *See Tex. Educ. Agency v. Cypress Fairbanks I.S.D.,* 830 S.W.2d 88, 90-91 (Tex. 1992).

We have previously determined that Ingram was not entitled to FMLA leave because she was not incapacitated due to a chronic serious health condition and that subsection (v) of 29 C.F.R. § 825.114(a)(2) did not apply to her. That being the case, there can be no interference by WSISD with her FMLA rights, that is, WSISD cannot have failed to inform her of her right to FMLA leave because she was not entitled to such. Hence, her argument regarding the granting of the plea to the jurisdiction is futile and mooted by our prior holding. Ingram's second issue is overruled.

### V. Conclusion

Having overruled Ingram's two issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL B:   DAUPHINOT, GARDNER, and MCCOY, JJ.

DELIVERED: May 1, 2008

17