COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

 

                                        NO.
2-07-306-CV

 

 

PAMELA INGRAM                                                                APPELLANT

 

                                                   V.

 

WHITE SETTLEMENT                                                              APPELLEE

INDEPENDENT SCHOOL
DISTRICT 

 

                                              ------------

 

            FROM THE 67TH
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I. 
Introduction

In two issues, Appellant Pamela Ingram (AIngram@) argues
that the trial court erred (1) by granting a directed verdict in favor of
Appellee White Settlement Independent School District (AWSISD@) and
(2) by granting WSISD=s pretrial plea to the
jurisdiction.  We affirm.








II. 
Factual and Procedural History

Ingram was employed for sixteen
years at WSISD=s central office until June 21,
2004.  There is a dispute as to why she
was let go.  WSISD told Ingram she was
terminated due to central office restructuring. 
However, Ingram was the only employee let go and, therefore, believed it
was due to her medical condition.     

WSISD contended that Ingram chose to ignore the
real reason she was let go.  In the
summer of 2004, Ingram=s supervisor, Mr. Welch, became
the executive director of a multimillion dollar ($172 million) bond
program.  Neither Mr. Welch, nor the
superintendent of WSISD, Susan Simpson, thought Ingram had the necessary skills
to assist Mr. Welch in this new program; therefore, she was let go.  Ingram agreed that the duties of Mr. Welch=s new
secretary after the restructuring were Adifferent@ than
her duties and that WSISD=s reason for termination was a
valid one, if that was what happened.








However, Ingram alleged that she was terminated
due to a prolonged medical condition. 
Ingram claimed that she was attacked verbally for taking time off and
that her supervisor became increasingly Ahostile@ toward
her.  Furthermore, Ingram stated that on
the day she was terminated her supervisor told her Anow she
could go home and take care of her health.@  She also asserted that in her
post-termination interview, she was told that WSISD terminated her for Amissing
too much time@ and for performing personal
business on company time.

Ingram=s
pertinent medical problems began in December 2002, when she began having
medical problems that were eventually diagnosed as arthritis.  Over the next year and a half, she saw four
doctors, underwent numerous tests, had two MRI=s,
received a series of epidural injections in her back, took different
medications (including steroid injections), and was prescribed ten weeks of
physical therapy.  During 2003, she had
to take time off for her numerous doctor visits, and she would occasionally
take an extended lunch break, arrive late, or leave early due to the pain and
medication regimen.








Ingram described her condition as a severe
burning pain that radiated in her shoulder and arm causing numbness in her
hip.  Both she and her husband testified
that the pain prevented her from performing normal household duties.  Furthermore, Ingram contends that she was
absent during the workday Afor
minutes to an hour@ because she was incapacitated
by her condition or for treatment. 
However, WSISD asserted that Ingram told her doctor in May 2003 that she
could do a number of things with little or no difficulty, including performing
her job, jogging two miles, and participating in sports.  Although she was involved in a ten-week
therapy course in September 2003, some nine months before she was let go, her
condition had improved by about 25% at the time of her termination.

Ingram stated that she only used four and a half
days of sick leave in 2003 and that she used her accumulated comp time or made
up the work for any other time missed. 
WSISD stated that she was not absent from work much, and in 2004, her
absences decreased; in fact she used only three and a half days of vacation
time, comp time, or both. 








After being terminated, Ingram filed a grievance under
WSISD=s
grievance policy alleging unlawful termination due to age discrimination,
violation of her right to sick leave granted by State law, and violation of the
Family Medical Leave Act (AFMLA@).  She appealed to the Board of Trustees where
her grievances were eventually denied. 
In 2006, Ingram brought suit under four separate claims; only two of
which are on appeal.  Ingram alleged in one
of her causes of action that WSISD had failed to notify her of her right to
take intermittent leave under the FMLA (the interference claim), in response to
which WSISD filed a plea to the jurisdiction. 
The trial court granted the plea to the jurisdiction and dismissed
Ingram=s
interference claim, holding in its March 5, 2007 order that Ingram had Afailed
to exhaust her administrative remedies against@ WSISD
and that the trial court therefore lacked subject matter jurisdiction.  The remaining causes of action were tried,
but the trial court granted a directed verdict as to her remaining claims,
including her retaliation allegation under the FMLA (the protection
claim).  Specifically, WSISD moved for a
directed verdict on this claim on two grounds, the first of which being that
there was Ano evidence that the plaintiff
had a serious health condition that makes the employee unable to perform the
functions of her position.@  The trial court granted the directed verdict,
apparently on that ground, stating as follows: 

There is no FMLA
violation under the facts of the case.  At
no time has there been any evidence that she had an inability to work due to a
serious health condition. . . .  It=s got to be due to that
serious health condition.  Just because
they take off, I don=t disagree that she
took.  I don=t disagree with that at
all.  But at no time, in fact, the
evidence is opposite even from her own mouth that she was able at all times to
work.  And in all the other cases that
are cited, people couldn=t work because of the
disabilities.  They couldn=t work because of
whatever condition.  In this situation,
she stated, I, at all times, could work. 
She took off for physical therapy but she said I can work.  And because of that, there was no FMLA.  The FMLA doesn=t apply.  There is no leave.  Therefore, I grant the directed verdict.  And with that, this case is now complete.

 

This appeal followed only as to the FMLA interference and retaliation
claims.

III.  First
IssueCRetaliation Claim

In her first issue, Ingram complains that the
trial court erred in granting a directed verdict on her FMLA protection claim
based on the idea that she had no period of incapacity.  This claim involved her assertion of
retaliation by WSISD against her for invoking her FMLA rights. 

 








A. 
Standard of Review

A directed verdict is proper only under limited
circumstances: (1) when the evidence conclusively establishes the right of the
movant to judgment or negates the right of the opponent or (2) when the
evidence is insufficient to raise a material fact issue.  See Prudential Ins. Co. v. Fin. Review Servs.,
Inc., 29 S.W.3d 74, 77 (Tex. 2000); Ray v. McFarland, 97 S.W.3d 728,
729-30 (Tex. App.CFort Worth 2003, no pet.).  In reviewing a directed verdict, we must
credit favorable evidence if reasonable jurors could and disregard contrary
evidence unless reasonable jurors could not. 
See City of Keller v. Wilson, 168 S.W.3d 802, 827 (Tex. 2005).

If the question to be decided is whether the losing party
at trial raised a material fact issue, we consider all the evidence in the
light most favorable to the party against whom the verdict was instructed and
disregard all contrary evidence and inferences; we give the losing party the
benefit of all reasonable inferences created by the evidence.  Coastal Transp. Co. v. Crown Cent.
Petroleum Corp., 136 S.W.3d 227, 234 (Tex. 2004).  If we determine that any conflicting evidence
of probative value raises a material fact issue on any theory of recovery, then
the directed verdict is improper because such an issue is for the jury to
resolve.  Szczepanik v. First S. Trust
Co., 883 S.W.2d 648, 649 (Tex. 1994). 









The motion must specifically state what grounds merit the
directed verdict.  Tex. R. Civ. P. 268.  However, the failure to specify
a ground in the motion is not fatal if there are no fact issues raised by the
evidence and the prevailing party is entitled to judgment as a matter of
law.  Deutsch v. Hoover, Bax &
Slovacek, L.L.P., 97 S.W.3d 179, 195 (Tex. App.CHouston [14th
Dist.] 2002, no pet.) (citing Tex. Employers Ins. Ass=n v. Page, 553 S.W.2d 98,
102 (Tex. 1977)).  We can
consider any reason the directed verdict should have been granted, even if not
stated in the party=s motion.  Ibarra v. Nat=l
Constr. Rentals, Inc., 199 S.W.3d 32, 37 (Tex. App.CSan
Antonio 2006, no pet.).  We must affirm a
directed verdict even though the trial court=s rationale was
erroneous if the directed verdict can be supported on another basis.  Cano v. N. Tex. Nephrology Assocs., P.A.,
99 S.W.3d 330, 339 (Tex. App.CFort Worth 2003,
no pet.).

B. 
Retaliation Claims








In cases such as this, the initial burden is on
Ingram to provide evidence of each element of her retaliation claim.  The elements of an FMLA retaliation claim are
that the employee availed herself of an FMLA protected right, that she was
adversely affected by an employment decision, and that there was a causal
connection between the employee=s
protected activity and the employer=s
adverse employment action.  Boriski v.
City of College Station, 65 F. Supp. 2d 493, 502 (S.D. Tex. 1999); see
also Chaffin v. John H. Carter Co., 179 F.3d 316, 319 (5th Cir. 1999); Hodgens
v. Gen. Dynamics Corp., 144 F.3d 151, 161 (1st Cir. 1998).  Next, WSISD must demonstrate a legitimate and
non-discriminatory reason for its employment action against Ingram.  See Chaffin, 179 F.3d at 320.  Assuming the second step has been met, Ingram
must then show that the reason offered by WSISD was a mere pretext for the
prohibited retaliation adverse employment action.  See id.; see also St. Mary=s Honor
Ctr. v. Hicks, 509 U.S. 502, 506-08, 113 S. Ct. 2742, 2747-48
(1993) (stating that the plaintiff retains the ultimate burden of persuasion on
the issue of intentional discrimination).

C.  WSISD=s
Position

WSISD asserts that the directed verdict on Ingram=s
retaliation claim was proper for three reasons. 
First, Ingram had no protected right under the FMLA because she had no
period of incapacity.  Second, Ingram
presented no evidence that exercising her rights under the FMLA caused the
adverse employment action by WSISD. 
Third, Ingram presented no evidence that the reason offered by WSISD for
Ingram=s
termination was a pretext for prohibited retaliation.

Initally, with respect to WSISD=s first
argument, we must look at 29 C.F.R. '
825.114(a), entitled, AWhat is a >serious
health condition= entitling an employee to FMLA
leave?@  It provides in part as follows:








(a) . . . [A] Aserious health condition@ entitling an employee to
FMLA leave means an illness, injury, impairment, or physical or mental
condition that involves:

 

. . .
. 

 

(2) . . . .  A serious health condition involving
continuing treatment by a health care provider includes any one or more of the
following:

 

. . . . 

 

(iii) Any period of
incapacity or treatment for such incapacity due to a chronic serious health
condition.  A chronic serious health
condition is one which: 

 

(A)Requires periodic visits for treatment by a
health care provider . . . .   

 

(B) Continues over an extended period of time . . . and 

 

(C) May cause episodic
rather than a continuing period of incapacity[.]

 

. . .
.

 

(v) Any period of absence
to receive multiple treatments . . . by a health care provider . . . for a
condition that would likely result in a period of incapacity of more than three
consecutive calendar days in the absence of medical intervention or treatment,
such as cancer (chemotherapy, radiation, etc.), severe arthritis (physical
therapy), kidney disease (dialysis).

 

29 C.F.R. ' 825.114(a) (2005).  








Thus, for purposes of this case, Ingram was
entitled to FMLA leave if she had an illness that involved continuing treatment
by a healthcare provider, (a) which encompassed any period of incapacity due to
a chronic serious health condition, that is, one that required periodic
treatment by a healthcare provider which continued over an extended period of
time and which may have caused episodic incapacity in lieu of continuing
incapacity, or (b) which encompassed a period of absence to receive multiple
treatments for a condition that, without such treatment, would likely have
resulted in incapacity of more than three consecutive calendar days, such as
physical therapy for severe arthritis.  

AIncapacity@ is
defined in the same section as Ainability
to work, attend school or perform other regular daily activities due to the
serious health condition, treatment therefore, or recovery therefrom.@  Id. '
825.114(a)(2)(i).

It appears logical that for a work-related FMLA
leave, the claimant must show that her condition affected her abilities at work
as set forth in 29 C.F.R. '
825.114.  The evidence clearly showed
that Ingram was able to work throughout her illness, particularly in 2004 when
she was terminated.  She testified as
follows:

Q.  But you=re, in fact, are able to do your job, you were
able to do your job, weren=t you?

 

A.  I did it to the best of my ability, yes.

 

. . . . 

 

Q.  So your testimony is that you were able to do
the functions of your job?








A.  Yes.

 

. . . .

 

Q. . . . And our record
shows that you missed about three and a half days, does that sound right?

 

A.  Yes, sir.

 

Ingram testified that she told her doctor the following:

Q.  You could run or jog two miles with some
difficulty?

 

A.  Well, I didn=t do that often, yes.

 

. . . .

 

Q.  You could climb up a flight of stairs without
any difficulty?

 

A.  Um-hum.

 

Q.  Is that correct?

 

A.  Well, I didn=t have any stairs, but I
guess I could have.

 

. . . . 

 

Q.  Participate in sports and games as you would
like, correct?

 

A.  Right. 

 

. . . .

 

Q.  And you could do your work?

 

A.  Yes.

 

Q.  You weren=t disabled from doing anything at work?

 








A.  No.  I
could do my work.

 

She also testified as follows:

Q.  And you testified earlier that this 2003,
September 2003, which is about nine months before you were terminated, therapy
was a ten-week course?

 

A.  Yes, ma=am.

 

Q.  So you were gone -- you took off early twice
a week for ten weeks?

 

A.  Yes, ma=am.

 

. . .
.

 

Q.  And then likewise, you just testified about
having some epidurals in May of 2004, March, April and May?

 

A.  Yes, ma=am.

 

Q.  And you said those were scheduled for what
time of day?

 

A.  I believe it was 7:15 in the morning.

 

Q.  You came in late those days?

 

A.  Just about 15, 30 minutes.

 

. . .
. 

 

Q.  So your testimony is that you were late
because you had a doctor=s appointment?

 

A.  Yes, ma=am.

 

Q.  And this lunch hour, you took a lot of long
lunches, I understand?








A.  No, not really.

 

Q.  Sometimes you=d stay two hours, you
left at 11:00 or you came back at 2:00, I think?

 

A.  If I did that, it was I -- going home, took
my medication.  The medication made me
feel funny right at first or to make it work. 
I=d go home, take it, lay
down for a little bit, let it get to work, and then come back to work.  But I always made up my time. 

 

. . . .

 

Q.  So just so the jury has some idea, how often
would you do it, once a month?

 

A.  Maybe.

 

Q.  So what about twice a month?

 

A.  Maybe, possibly.

 

Q.  What are we talking about now?

 

A.  Maybe going home and, you know, taking my
medication -- having to take my medication during the most intense period of my
illness.  Yeah, it may have been twice a
month.

 

Q.  And what other period of time are we talking
about?

 

A.  On lunch.

 

Q.  No, which period of time --

 

A.  Oh, I would say probably January to -- well,
maybe December of 2003, or I=m sorry, of 2004. 

 

Under the appropriate standard of review, we hold
that Ingram failed to show that she was incapacitated as that term is defined
in the statute.













With regard to 29 C.F.R. '
825.114(a)(2)(v), regarding absence involving multiple treatments, it was
necessary for Ingram to show that her condition, absent medical intervention or
treatment, Awould likely result in a period
of incapacity of more than three consecutive calendar days.@  See 29 C.F.R. '
825.114(a)(2)(v).  Ingram makes the
blanket statement that the Amedical
records and testimony of Ingram and her husband are more than sufficient
evidence to support a jury inference that Ingram=s
condition would have resulted in three days or more days of incapacity in [the]
absence of medical intervention.@  First, Ingram does not point to any item in
her fifty-plus pages of medical reports to support her assertion.  An appellate court is not required to
search the appellate record, with no guidance from the briefing party, to
determine if the record supports the party=s argument.  Hall v. Stephenson, 919 S.W.2d 454,
466-67 (Tex. App.CFort Worth 1996, writ denied).  Also, Awe know of no
authority obligating us to become advocates for a particular litigant through
performing their research and developing their argument for them.@  Tello v. Bank One, N.A., 218
S.W.3d 109, 116 (Tex. App.CHouston [14th
Dist.] 2007, no pet.).  Thus, an
inadequately briefed point may be waived on appeal.  Hall, 919 S.W.2d at 467; see also
Fredonia State Bank v. Gen. Am. Life Ins. Co., 881 S.W.2d 279,
284-85 (Tex. 1994) (discussing Along-standing rule@ that point may be
waived due to inadequate briefing).  Second, there is no expert testimony with
regard to any untreated condition resulting in a three day absence.  And third, Ingram does not point us to
evidence in the record where any lay testimony indicates a three day absence
would result.  

She also directs us to the language in 29 C.F.R. '
825.114(a)(2)(v) regarding Asevere
arthritis (physical therapy).@  A fair reading of that statutory section in
its entirety indicates that this portion of part (v) is indicative of examples
of Atreatment,@ such as
chemotherapy for cancer, physical therapy for severe arthritis, and kidney
dialysis for disease.  Any periods of
absence alluded to by Ingram did not involve physical therapy for severe
arthritis.  As such, her argument is a
non-starter.  Therefore we hold that
there is insufficient evidence that she was entitled to an FMLA leave under
subsection (v).  

Consequently, we cannot say that the trial court
erred in granting the directed verdict on her retaliation (protection) claim
since the evidence demonstrates that Ingram was not incapacitated due to a
chronic serious health condition, nor has she shown that subsection (v) was
applicable to her.  That being the case,
WSISD could not retaliate against her regarding an FMLA leave to which she was
not entitled.  Ingram=s first
issue is overruled.  

IV.  Second
IssueCInterference Claim








As set out by Ingram, to prevail on an FMLA
interference claim, she must establish the following: (1) she was eligible for
the FMLA=s
protections, (2) her employer was covered by the FMLA, (3) she was entitled to
leave under the FMLA, (4) she provided sufficient notice of her intent to take
leave, and (5) her employer denied her FMLA benefits to which she was
entitled.  Hoge v. Honda of Am. Mfg.,
Inc., 384 F.3d 238, 244 (6th Cir. 2004).

It is axiomatic that subject matter jurisdiction
is essential for a court to decide a case before it.  Bland Indep. Sch. Dist. v. Blue, 34
S.W.3d 547, 553-54 (Tex. 2000).  If a
party alleges that subject matter jurisdiction is absent, a plea to the
jurisdiction may be the appropriate vehicle to raise that issue.  Id. at 554.  Exhaustion of administrative remedies is a
prerequisite for a court to have subject matter jurisdiction.  Wilmer-Hutchins Indep. Sch. Dist. v.
Sullivan, 51 S.W.3d 293, 294 (Tex. 2001). 


In the case before us, WSISD asserts that Ingram
brought a claim for retaliation against WSISD in her grievance process but did
not assert any interference claim, that is, that she was not informed of her
right to FMLA leave. Therefore, because the interference claim was not brought during
the administrative claim process, the trial court was without jurisdiction to
entertain the interference claim. 








Ingram responds with a two-fold argument.  First, she argues that it is not necessary to
have asserted the interference claim because that claim is Alike or
related to@ her retaliation claim.  Second, she is not required to have exhausted
her administrative remedies with respect to the interference claim because it
is a claim based on federal statutory rights. 
See Tex. Educ. Agency v. Cypress Fairbanks I.S.D., 830 S.W.2d 88,
90-91 (Tex. 1992).

We have previously determined that Ingram was not
entitled to FMLA leave because she was not incapacitated due to a chronic
serious health condition and that subsection (v) of 29 C.F.R. '
825.114(a)(2) did not apply to her.  That
being the case, there can be no interference by WSISD with her FMLA rights,
that is, WSISD cannot have failed to inform her of her right to FMLA leave
because she was not entitled to such. 
Hence, her argument regarding the granting of the plea to the
jurisdiction is futile and mooted by our prior holding.  Ingram=s second
issue is overruled.  

V. 
Conclusion

Having overruled Ingram=s two
issues, we
affirm the trial court=s judgment.

 

 

BOB
MCCOY

JUSTICE

 

PANEL B:   DAUPHINOT,
GARDNER, and MCCOY, JJ.

 

DELIVERED: May 1, 2008

 

 











[1]See Tex. R. App. P. 47.4.